1

2                                                              **E-Filed 06/01/06**

3

4

5

6

7

8                              NOT FOR CITATION

                    IN THE UNITED STATES DISTRICT COURT

9

                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11                              SAN JOSE DIVISION

12

    BERCUT-VANDERVOORT & CO.,              Case Number C 05-05122 JF
13
                        Plaintiff,         ORDER[1] DENYING MOTION TO
14                                          DISMISS
             v.
15                                         [re: docket no. 9]

16   MAISON TARRIDE LEDROIT & CIE,

                        Defendant.
17

18
             Defendant Maison Tarride Ledroit & Cie ("MTL") moves to dismiss the complaint of
19
     Plaintiff Bercut-Vandervoort & Co. ("BVC") for failure to state a claim upon which relief may
20
     be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  BVC opposes the motion.  The
21
     Court heard oral argument on May 26, 2006.  For the reason set forth below, the Court will deny
22
     the motion.
23

24
                                    I. BACKGROUND
25
             On December 12, 2005, BVC filed the complaint in the instant action, alleging ten claims
26

27   _____

28        [1] This disposition is not designated for publication and may not be cited.

     Case No. C 05-05122 JF
     ORDER DENYING MOTION TO DISMISS
     (JFEX1)

for relief: (1) declaratory judgment relating to ownership of trademarks; (2) cancellation of MTL's federal trademark applications and registrations of the trademarks under 15 U.S.C. § 1064; (3) federal false designation of origin and unfair competition under 15 U.S.C. § 1125(A)(1); (4) trade dress infringement under 15 U.S.C. § 1125(A); (5) common law unfair competition; (6) unfair business practices, including violation of California Business & Professional Code Sections 17200 and 17500; (7) intentional interference with contractual relations; (8) tortious interference with prospective business advantages; (9) common law misappropriation; and (10) unjust enrichment.

BVC alleges the following. In 1946, Henry van der Voort ("van der Voort") cofounded Vandervoort & Co., Inc., which later became known as BVC, for the purposes of importing French wines and selling them to the American market. Van der Voort selected which wines would be imported from France and named and branded the wines for sale in the United States. Additionally, van der Voort designed the labels and placed the van der Voort Coat of Arms Insignia on either the label and/or the neck of the wine bottle.

Approximately twelve years after creating BVC, van der Voort and a colleague formed MTL in France. MTL, which acted as a division of BVC, oversaw the selection, purchasing, bottling and shipping of wines acquired in France. No written agreement was created because van der Voort essentially operated both companies. Nonetheless, BVC alleges that there was a mutual understanding between the two companies that BVC retained ownership of the brand names of the wines, the Coat of Arms Insignia, and the labels. The French wine bottles distributed by BVC indicated that BVC was the sole U.S. importer of the wine and did not contain any indicia of an association with MTL. As new labels for the wines were created, BVC applied to the U.S. Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms and to the appropriate state agencies for approval.

In 1970, van der Voort, by then the sole shareholder of MTL, sold his MTL shares to Satellis, a Swiss company. At this time, BVC and MTL entered into a written contract confirming their exclusive relationship. Van der Voort's nephew, Yves de Boisredon, managed

MTL from 1971 until 1981, when de Boisredon's younger brother, Philippe de Boisredon, succeeded him.  In or about 1981, BVC and MTL again entered into an agreement confirming both their exclusive relationship and BVC's responsibility for monitoring and preserving the name brands.  The agreements between MTL and BVC were updated and reconfirmed multiple times over the next twenty years.  With few exceptions, BVC continued to purchase all of its French wines through MTL.

BVC alleges that van der Voort's efforts in creating the brand names were for the benefit of BVC, rather than MTL.  However, van der Voort was indifferent as to which company trademarked the names, labels and coat of arms because the companies had been under common ownership and MTL existed only for the benefit of BVC.  Because MTL already had registered the brand names, labels and coat of arms in France, van der Voort believed it would be easier if MTL also were to register these marks in the United States.  Accordingly, beginning in the 1970s, MTL and/or Satelis registered trademarks for the brand names, the van der Voort Coat of Arms and the labels.  BVC's complaint specifies the exact dates of trademark registration for fifteen marks, ranging from November 6, 1973 to December 10, 1996, and indicates that six of these marks were assigned to MTL on February 17, 1998.  BVC points out that some of the trademarks specify 1947, which is the year BVC was incorporated and which is significantly prior to the formation of MTL, as the year of first use.

In June 1997, BVC and MTL entered into a ten-year agreement that set forth the exclusive relationship between the two companies but did not address trademark ownership.  On or about October 31, 1997, van der Voort sold his entire interest in BVC to de Vernou, his distributor, and disputes regarding the ownership of the trademarks subsequently arose.  Despite the existence of these disputes, the parties continued to conduct business under the 1997 agreement.  In January 1999, a new contract was written to replace the 1997 agreement and affirm the exclusive relationship between the parties.  Again, the agreement did not refer to trademark ownership. Although the companies exchanged letters disputing their respective rights to the trademarks throughout 1999, the business relationship between the two companies

1  persisted.  MTL filed applications for Trademark Renewals and Declarations of Use in

2  Commerce for multiple brand names in the late 1990s and early 2000s.

3      In 2001, yet another contract was formed, which included minor changes regarding

4  pricing and conditions but yet again did not address ownership of the trademarks.  In 2002, de

5  Boisredon wrote to BVC asserting his ownership of the trademarks. BVC replied that it was the

6  owner of the trademarks due to a mistake in registration and prior use.   In mid-2005, BVC

7  terminated the 2001 agreement.  MTL continues to sell wines under the trademarks in dispute.

8

9                                    **II. LEGAL STANDARD**

10      For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the

11  Court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*

12  *McKeithen*, 395 U.S. 411, 421 (1969).  Leave to amend must be granted unless it is clear that the

13  complaint's deficiencies cannot be cured by amendment.  *Lucas v. Department of Corrections*,

14  66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be

15  ordered with prejudice.  *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

16

17                                    **II. DISCUSSION**

18      MTL moves to dismiss all of BVC's claims with prejudice for failure to state a claim

19  upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the

20  ground that BVC cannot establish ownership of the trademarks, which is necessary to the claims,

21  or, alternatively, that the claims are barred by either the statute of limitations or the doctrine of

22  laches.

23  **1.  Ownership of Trademarks**

24      MTL argues that BVC's ten claims for relief are not legally recognizable unless BVC can

25  establish that it is the legal owner of the trademarks.  All of the trademarks in dispute were

26  registered more than five years prior to the filing of the instant complaint.  Under the Lanham

27  Act, a trademark becomes "incontestable" five years after its registration, unless one or more

28

Case No. C 05-05122 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)

exceptions apply.  15 U.S.C. §§ 1064(3), 1065.  BVC asserts that four such exceptions apply

here: (a) fraudulent registration of the trademark; (b) abandonment of the trademark; (c) use of

the trademark so as to misrepresent the source of the goods or services; (d) and prior use.

Complaint ¶ 72.

*a.  Fraudulent Registration*

MTL argues that BVC's complaint fails to allege fraud with particularity.  Fraud claims

asserted in federal court must comply with the requirements of Federal Rule of Civil Procedure

9(b), which provides that allegations of fraud must be stated with particularity.  Fed. R. Civ. P.

9(b).  In order to satisfy this requirement the plaintiff must set forth an explanation as to why the

statement or omission complained of was false or misleading.  *In re GlenFed, Inc. Sec. Litig.*, 42

F.3d 1541, 1548 (9th Cir. 1994); *Glen Holly Entm't v. Tektronix, Inc.*, 100 F. Supp. 2d 1086,

1094 (C.D. Cal. 1999).  The defendant's scienter, or knowledge of falsity, may be alleged in

conclusory fashion.  *In re GlenFed*, 42 F.3d at 1548.

Fraud under Section 1064 of the Lanham Act requires the following: (1)

misrepresentation, (2) the knowledge or belief that the misrepresentation is being made, (3) the

intent to defraud, (4) reasonable reliance thereon, and (5) damages proximately resulting from the

reliance.  *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).

BVC makes several particularized allegations, including an allegation that:

> Because MTL knowingly and intentionally submitted false Declarations with an
> intent to defraud the Patent and Trademark Office, the renewals and incontestable
> right to use the Trademarks were obtained fraudulently.

Complaint ¶ 55.  The complaint also addresses the economic harm BVC allegedly faces as a

result of MTL's actions.  *Id.* ¶ 61.  Although BVC provides specific examples of only three of the

false "Declarations," these examples are sufficient to put MTL on notice of the alleged fraud.

Construing the allegations in light most favorable to BVC, the Court concludes that BVC's fraud

allegations meet the particularity standards of Federal Rule of Civil Procedure 9(b).

*b. Abandonment*

Under the Lanham Act, a trademark will be designated as abandoned "when its use has

1    been discontinued with intent not to resume such use." 15 U.S.C. § 1127.  If a trademark is not

2    used for three consecutive years then there is prima facie evidence that it has been abandoned.

3    *Id.*  This presumption may be rebutted if valid reasons are presented for the nonuse or lack of

4    intent to abandon.  *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir.

5    1985); *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 411 (9th Cir. 1996).

6         BVC alleges that throughout its business relationship with MTL, BVC possessed the

7    exclusive control and use of the trademarks.  BVC further alleges that it was not until 2005, after

8    the termination of the contract between BVC and MTL, that MTL began "using" the trademarks.

9    Complaint ¶ 59.  Accordingly, the Court concludes that BVC has alleged abandonment

10   adequately.

11        *c. Misrepresentation*

12        Section 1064 of the Lanham Act provides that a trademark may be contested more than

13   five years after registration "if the registered mark is being used by, or with the permission of, the

14   registrant so as to misrepresent the source of the goods or services on or in connection with

15   which the mark is used." 15 U.S.C. § 1064(3).  Use of a trademark to confuse the public as to

16   who produced a product or use of a trademark to take advantage of another's representation is

17   considered a misrepresentation.  *Cuban Cigar Brands N. V. v. Upmann Intern., Inc.*, 457 F. Supp.

18   1090, 1101 (D.C.N.Y. 1978); *see also H.H. Scott, Inc. v. Annapolis Electroacoustic Corp.*, 195

19   F. Supp. 208 (D. Md. 1961).

20        BVC alleges that MTL's use of the trademarks constitutes misrepresentation because the

21   public associates BVC, not MTL, with the brand names, labels and coat of arms.  BVC further

22   alleges that in the past the public never associated the trademarks with MTL, because MTL was

23   solely the supplier and shipper of the products.  Complaint ¶ 26.  MTL argues that its use of the

24   trademarks is not a misrepresentation because BVC itself alleges that MTL has been in the

25   business of selecting, blending, bottling and labeling wines.  However, this argument is not

26   incompatible with BVC's allegation that MTL's actions constitute misrepresentations.

27   Accordingly, the Court concludes that BVC has alleged misrepresentation adequately.

28

6

1

*d.   Common Law Right of Prior Use*

2        To the extent that a trademark infringes on a valid right of prior use under state common

3 law, it is contestable.  15 U.S.C. § 1065; *Casual Corner Assoc., Inc. v. Casual Stores of Nevada,*

4 *Inc.*, 493 F.2d 709, 711 (9th Cir. 1974).  To establish prior use, BVC must show that its use of

5 the brand names, labels and coat of arms began before MTL registered them and that BVC's use

6 was continuous without interruption.  *See Casual Corner Assoc., Inc.*, 493 F.2d at 712.  BVC

7 states in its second claim for relief that, "as a result of BVC's senior and continuing use of the

8 BVC Brand Names, the Coat of Arms Insignia, and the BVC Labels . . . the trademarks have lost

9 their incontestable status and are subject to cancellation."  The Court concludes that BVC has

10 alleged prior use adequately.

11 **2.  Statute of limitations**

12        Because the Lanham Act lacks its own statute of limitations, courts apply the most

13 analogous state statute of limitations.  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d

14 829, 836 (9th Cir. 2002).  However, § 1064(3) of the Lanham Act differs from the rest of the Act

15 because it states that a claim of fraud, abandonment or misrepresentation may be brought "at any

16 time."  15 U.S.C. § 1064(3).  In contrast, §§ 1064(1)-(2) state specifically that a trademark must

17 be contested "within five years from the date of the registration" or "publication." 15 U.S.C. §

18 1064(1)-(2).

19        BVC asserts that because § 1064(3) permits a fraud claim to be brought "at any time," the

20 three-year statute of limitations for fraud under California law does not apply.  CAL. CIV. PROC. §

21 338(d).  The Third Circuit has held that a state statute of limitations does not apply to § 1064(3).

22 *Marshak v. Treadwell*, 240 F.3d 184, 192-93 (3rd Cir. 2001).  This holding is consistent with the

23 Ninth Circuit's statement that "the words '[a]t any time'" impose "no statute of limitations for

24 bringing petitions."  *Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 48 (9th Cir. 2005) (dictum) (citing

25 15 U.S.C. § 1064(3).  Accordingly, the Court declines to dismiss the instant complaint as time-

26 barred.

27 **3. Doctrine of Laches / Estoppel**

28

7

1    The doctrine of laches "'is an equitable time limitation on a party's right to bring suit.'"

2  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quoting *Boone*

3  *v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir.1979)).  It is based on the principle that "one

4  who seeks the help of a court of equity must not sleep on his rights." *Piper Aircraft Corp. v.*

5  *Wag-Aero, Inc.*, 741 F.2d 925, 939 (7th Cir. 1984).  A laches defense requires that: (1) the delay

6  in filing the suit was unreasonable and that (2) this delay prejudiced the other party.  *Bosse v.*

7  *Crowell Collier and Macmillan*, 565 F.2d 602, 612 (9th Cir. 1977).  The delay in filing suit is

8  unreasonable if (1) the party "knew or should have known" about the events giving rise to the

9  claim and (2) the amount of time between this and filing was unreasonable.  *Jarrow Formulas,*

10  *Inc.*, 304 F.3d at 838.  Laches is often closely tied to the statute of limitations.  Thus, if the claim

11  is valid under the applicable statute of limitations, then there is a "strong presumption . . . that

12  laches is inapplicable." *Id.* at 835.  However, there is no presumption when some of the events

13  necessary to the claim occurred within the statute of limitations and others did not.  *Id.* at 837.

14  This allows for laches to apply to a "continuing wrong."[2]  *Id.*

15    The Ninth Circuit has held that "'a claim of laches depends on a close evaluation of all

16  the particular facts in a case,'"  *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005) (quoting

17  *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000)).  While a laches defense "'is

18  seldom susceptible of resolution by summary judgment,'" it is even less likely to succeed on a

19  motion to dismiss.  *Id.* ("At the motion-to-dismiss phase, the obstacle to asserting a successful

20  laches defense is even greater because the defendant must rely exclusively upon the factual

21  allegations set forth in the complaint.").  Considering that many of the trademarks were first

22  registered in the 1970s, it is possible that this defense may succeed on summary judgment with

23  respect to one or more of the trademarks at issue.  However, the facts alleged in BVC's

24

25    [2]BVC argues that *Marshak v. Treadwell* establishes that laches is not a defense to

26  fraudulent claims.  *See Marshak*, 240 F.3d 184 (3rd Cir. 2001).  However the language in that
    case was dicta, and it has not been followed by the District of Columbia Circuit.  *Pro-Football,*

27  *Inc. v. Harjo*, 415 F.3d 44, 48 (D.C. Cir. 2005) (stating that laches is an applicable defense to §

28  1064(3).).

8

1  complaint are insufficient on their face to establish the defense of laches.  Without a more

2  complete factual record, this Court is not in a position to dismiss this case on equitable grounds.

3

4                                    **IV. ORDER**

5          Good cause therefore appearing, IT IS HEREBY ORDERED that the motion to dismiss is

6  DENIED.  Defendants shall file their answer within twenty (20) days of the date of this Order.

7

8

9

10  DATED: June 1, 2006

11

12  _____

13  JEREMY FOGEL
    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        9

Case No. C 05-05122 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)

This Order has been served upon the following persons:

| | |
|---|---|
| K.C. Allan | kallan@perkinscoie.com, eeberline@perkinscoie.com, sandrews@perkinscoie.com, kwilson@perkinscoie.com |
| Anne Elizabeth Kearns | akearns@kksrr.com, alau@kksrr.com |
| Kenneth E. Keller | kkeller@kksrr.com, alau@kksrr.com |
| Kenneth B. Wilson | kwilson@perkinscoie.com, eeberline@perkinscoie.com, sshanberg@perkinscoie.com, spiepmeier@perkinscoie.com, kallan@perkinscoie.com, anrodriguez@perkinscoie.com, ebandyopadhyay@perkinscoie.com, lbailey@perkinscoie.com |

Case No. C 05-05122 JF
ORDER DENYING MOTION TO DISMISS
(JFEX1)