**United States District Court**
For the Northern District of California

**\*E-FILED 11/1/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERCUT-VANDERVOORT & CO., <br><br> Plaintiff, <br><br> v. <br><br> MAISON TARRIDE LEDROIT & CIE, <br><br> Defendant. | NO. C 05-5122 JF (RS) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL** |

## I. INTRODUCTION

Plaintiff Bercut-Vandervoort & Co. ("BVC") and defendant Maison Tarride Ledroit & Cie ("MTL") are an American company and a French company, respectively, that were formed a half-century ago, primarily for the purpose of importing into and selling French wines in the United States. The two companies, which once had overlapping ownership, are now in the hands of new owners, and the business relationship between them has ended. This action arises from a dispute as to which of the two companies is the rightful owner of various trademarks that were developed for the wines during the time the two companies were working together.

MTL moves to compel further production of documents that BVC has refused to produce on grounds of relevance or privilege. The motion was heard on November 1, 2006. Based on the parties' briefing, the arguments of counsel, and the record herein, the motion will be granted in part, and denied in part.

## II.  BACKGROUND

BVC traces its roots to 1946, when Henry van der Voort began importing wines to this country from France.  According to BVC, around 1958 Mr. van der Voort and a French colleague formed MTL, "for the purpose of facilitating BVC's importation of French wine."  For several decades, the two companies worked closely together, pursuant to a series of written contracts that provided for an exclusive relationship, with certain narrow exceptions.

BVC contends that Mr. van der Voort personally created all of the brand names for the wines that BVC was importing, that he designed the bottle labels, and that he incorporated his family coat of arms into many of the labels.  In 1970, Mr. van der Voort sold his shares of MTL to a Swiss entity, Satellis, S.A., which already controlled MTL.  Beginning shortly thereafter, MTL and Satellis filed trademark registrations for the van der Voort coat of arms and the brand names of the wines that BVC was importing.  BVC asserts that Mr. van der Voort "consented" to this as a matter of "convenience," because he believed that the parties understood that BVC remained the "true owner" of the marks.

In 1997, Mr. van der Voort, then 82 years old, was preparing to sell BVC and his other businesses.  In connection with those plans, BVC and MTL entered into a further ten year written contract memorializing their "exclusive relationship."  Shortly thereafter, Mr. van der Voort sold BVC to his distributor, Hugues de Vernou.

Under Mr. de Vernou's ownership of BVC, it and MTL almost immediately began to dispute which of them was the owner of the trademarks rights in the wines.  Nevertheless, the parties continued operating under the contract providing for an exclusive relationship between them.  By 1995, however, the relationship had become "unworkable," and BVC exercised its right under the parties' written agreement to terminate.  Thereafter, MTL began using another Untied States distributor to sell the wine brands it had previously sold exclusively through BVC.  In December of 2005, BVC filed this action, contending that it is the true owner of the trademarks for the wines it had been importing through MTL.

III. DISCUSSION

A. <u>Documents Related to BVC's "Own" Marks–Request Nos. 7, 10, 14, 16, 19, and 20</u>

There is no dispute that BVC is the sole owner of a number of trademarks *other* than the marks that are the subject of this litigation ("the BVC marks"). MTL has propounded several document requests seeking information related to how BVC has treated the BVC marks.[1] BVC refuses to produce responsive documents, arguing that its treatment of the BVC marks is wholly irrelevant to the question of who owns the marks in dispute in this action.

To support its argument that the BVC marks are irrelevant, BVC cites the factors listed in *Sengoku Works, Ltd. v. RMC Int'l Ltd*, 96 F.3d 1217, 1220 (9th Cir. 1996) for evaluating disputes between manufacturers and distributors over trademark ownership. BVC correctly points out that none of those factors relate to how one party may treat any *other* trademarks that it undisputedly owns. As BVC acknowledges, however, the *Sengoku* factors are applied to resolve disputes "in the *absence of an agreement*." See *Sengoku*, 96 F.3d at 1221 ("The court must first look to any agreement or acknowledgment between the parties regarding trademark rights.")[2] BVC fails to recognize that in this case it is alleging that the parties *had* an agreement– an express and/or implied "understanding"– that BVC was at all times the true owner of the marks, and that MTL or Satellis filed the registrations merely as a matter of "convenience."

A crucial factual dispute in this action, therefore, is whether any such agreement or "understanding" actually existed. Probative of that question is whether BVC's conduct has been consistent with its purported belief that it was always the true owner of the disputed marks. In these circumstances, BVC's treatment of the BVC marks *is* relevant, because if BVC treated the disputed marks significantly differently than it treated the BVC marks, that might support an inference by the

---

[1] For example, MTL seeks documents reflecting communications BVC has had with MTL or others regarding the BVC marks, advertising and marketing of the BVC marks, expenditures relating to the BVC marks, "maintenance" of the marks, and quality control efforts for goods sold under the marks.

[2] Indeed, the *Sengoku* factors do not even come into play except to rebut a presumption of trademark ownership that arises in the absence of an agreement and when neither party can prove that it initially owned the mark. 96 F.3d at 1220-21.

3

trier of fact that BVC did not actually believe it was the true owner of the disputed marks.[3]

To be sure, if BVC actually treated the disputed marks in that fashion, it will not be precluded from arguing to the trier of fact that the differing treatment is consistent with its claim that the arrangement was one of convenience, and that the differing treatment resulted only from the identity of the registering party, with no bearing on actual ownership. BVC's right to argue to a fact-finder that any differences in treatment are irrelevant, however, does not translate into a viable relevancy objection in discovery that would relieve it from producing responsive documents.

Finally, BVC has made no claim that production of responsive documents would be burdensome or is otherwise objectionable. While production of *wholly* irrelevant documents arguably is always an undue burden, where there is at least some potential relevance, production generally will be required absent some additional showing of burdensomeness or other factor militating against requiring it. Accordingly, BVC shall produce all non-privileged documents in it possession, custody or control that are responsive to request nos. 7, 10, 14, 16, 19, and 20.[4]

B. <u>Documents Related to Disputes Between BVC's Current Owner and Mr. van der Voort–Request No. 29</u>

As noted above, in 1997, Mr. van der Voort sold BVC to Mr. de Vernou. In 2004, Mr. de Vernou sued Mr. van der Voort in San Francisco County Superior Court alleging fraud in connection with the sale. In particular, it appears that Mr. de Vernou took the position that Mr. van der Voort had misrepresented the extent to which the ten-year exclusive distributorship agreement between BVC and MTL gave BVC exclusive rights to sell "Chateau Magdelaine" brand wines in the United States. According to Mr. de Vernou's complaint, unknown to him was the fact that BVC's exclusive

---

[3] At oral argument, BVC insisted that even for the purposes of evaluating whether the parties had an implied agreement or "understanding," the only relevant evidence would relate to the parties' conduct towards each other and how they each treated the disputed marks. BVC's claim, however, is that it owned the disputed marks. A comparison between how BVC treated marks it undisputedly owned and how it treated the undisputed marks, could assist a trier of fact in weighing the credibility of that claim.

[4] The parties resolved their disputes as to request no. 9 after the motion was filed. The Court expresses no opinion as to whether MTL had reason to include that request in the motion, but notes that the obligation to meet and confer with respect to any issue that can be resolved without Court intervention is always ongoing, even after a discovery motions has been filed.

rights to sell Chateau Magdelaine was terminable if Mr. van der Voort sold his interests in BVC.

The de Vernou–van der Voort litigation was settled. MTL now requests all documents relating to that dispute or any disputes between Mr. de Vernou and Mr. van der Voort regarding the sale of BVC, on the theories that either, (1) there may have been friction between the two over the fact that ownership of the marks in dispute here was not clear, and/or (2) the settlement of the de Vernou–van der Voort litigation may have included an agreement that he would cooperate with BVC in *this* action, such that his credibility is in question.

BVC is willing to produce any documents related to "any dispute Mr. van der Voort and Mr. de Vernou may have had related to the sale of BVC and the trademarks at issue." BVC represents that it *agrees* that even settlement documents from the de Vernou–van der Voort litigation would be relevant and would be subject to production *if* they showed that Mr. van der Voort agreed to cooperate in BVC's efforts to establish its ownership of the trademarks.

BVC appears to be representing that there simply are no documents relating to disputes between Mr. de Vernou and Mr. van der Voort as to what Mr. de Vernou was told about ownership of the disputed marks, and that Mr. van der Voort did not promise in the settlement agreement to cooperate with BVC in this dispute. The relevance test in discovery however, is simply that requests be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Here, it is reasonable to assume that documents about *any* disputes between Mr. de Vernou and Mr. van der Voort might contain admissible evidence, or lead to the discovery of admissible evidence, having a bearing on BVC's contention that the parties had an "understanding" as to where true ownership of the marks in dispute rests. Again, BVC has identified no undue burden or other basis to warrant relieving it from responding to this request as framed. Under these circumstances, BVC's unilateral determination that responsive documents are not "relevant" will not suffice. Accordingly, BVC shall produce all non-privileged documents in it possession, custody or control that are responsive to request no. 29.

C. <u>Documents Related to the Hiaring Letter–Requests Nos. 24 through 27</u>

On June 21, 1999, after this dispute over ownership of the trademarks had arisen, and after Mr. de Vernou had purchased BVC, he traveled to France and met with the managing director of

5

MTL, Phillippe de Boisredon.[5]  Mr. de Vernou handed Mr. de Boisredon a letter dated May 4, 1999, written to BVC by its attorney, Anne Hiaring, opining that BVC is the true owner of the disputed marks.  Mr. de Vernou now contends that he turned over that letter "inadvertently," and that he intended only to provide Mr. de Boisredon a "very similar" letter dated June 11, 1999, written by Ms. Hiaring and addressed directly to MTL.   Mr. de Boisderon declares that he was *not* given the June 11th letter and that he is "positive" that Mr. de Vernou knew he was turning over a letter addressed to BVC, not MTL, "based on comments" Mr. de Vernou made.

MTL now contends that by turning over the May 4th letter from its own attorney, BVC waived all attorney-client privilege with respect to the subject matter discussed therein.  MTL further asserts that the averments of the complaint in this action have "striking similarities" to the assertions of the May 4th letter.

The record does not support a conclusion that BVC waived all attorney-client privilege or work product protection with respect to the matters discussed in the Hiaring letter.  BVC is correct that there is little, if any, substantive difference, between the May letter addressed to BVC and the June letter addressed to MTL.  Each sets forth Ms. Hiaring's theories as to why ownership of the disputed marks rests with BVC  Neither contains any disclosure of perceived weaknesses in BVC's case.  MTL does not, and could not, argue that the June letter constitutes a waiver of the privilege–a party is entitled to present its attorney's arguments to the opposing side without that constituting a waiver.  The fact that BVC apparently initially presented those same arguments in a letter that happened to be addressed to itself rather than to MTL does not justify requiring BVC to reveal now all of its attorney-client confidences to MTL, particularly given that the record is not clear as to whether the disclosure was intentional.  Accordingly, the motion to compel further production as to request nos. 24-27 is denied.

---

[5]  Mr. de Boisredon is a nephew of Mr. van der Voort.

6

## IV. CONCLUSION

The motion to compel is granted to the extent set forth above, and is otherwise denied. BVC shall produce further documents as required by this order within 20 days of this date.

IT IS SO ORDERED.

Dated: _____
RICHARD SEEBORG
United States Magistrate Judge

ORDER
C 05-5122 JF (RS)

7

1 **THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

2 Lila Inayat Bailey     lbailey@perkinscoie.com

3 Anne Elizabeth Kearns     akearns@kksrr.com, alau@kksrr.com

4 Kenneth E. Keller     kkeller@kksrr.com, alau@kksrr.com

5 Michael H. Rubin     mrubin@perkinscoie.com, eeberline@perkinscoie.com

6 Kenneth B. Wilson     kwilson@perkinscoie.com, eeberline@perkinscoie.com; sshanberg@perkinscoie.com; wriggs@perkinscoie.com; lbailey@perkinscoie.com;
7 dhellmoldt@perkinscoie.com; mrubin@perkinscoie.com

9 Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

11 **Dated: 11/1/06**                                                                 **Chambers of Judge Richard Seeborg**

**By:**     **/s/ BAK**

ORDER
C 05-5122 JF (RS)

8