**\*E-FILED 12/13/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BERCUT-VANDERVOORT & CO.,<br><br>    Plaintiff,<br>  v.<br><br>MAISON TARRIDE LEDROIT & CIE,<br><br>    Defendant.<br>_____/ | NO. C 05-5122 JF (RS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL** |

## I. INTRODUCTION

Defendant Maison Tarride Ledroit & Cie ("MTL") moves to compel plaintiff Bercut-Vandervoort & Co. ("BVC") to provide further responses to six interrogatories. The motion was heard on December 13, 2006. Based on the parties' briefing, the arguments of counsel, and the record herein, the motion will be granted in part and denied in part.

## II. DISCUSSION[1]

A. <u>Interrogatory Nos. 2 and 4</u>

Interrogatory No. 2 requests BVC to identify each contract with which it contends MTL interfered. Interrogatory No. 4 seeks the same information with respect to "business relationships."

---

[1] The factual background of this action has been described in prior orders and will not be repeated here.

1

In response, BVC states that MTL had interfered with "oral distribution agreements and written contracts (as evidenced by the purchase orders)" and with "business relationships" between BVC and its distributors. BVC lists a handful of its distributors by name, and directs MTL to documents previously produced or to be produced, asserting that the names of "all of the distributors" in the purchase orders could be found therein.

MTL contends that BVC has misused Rule 33 (d) of the Federal Rules of Civil Procedure, because even after the meet and confer process and the briefing on this motion, MTL is uncertain as to what contracts or business relationships BVC believes are in dispute. MTL points out that BVC's opposition states it is making no claim of interference prior to June of 2005, but that nearly all of the purchase orders and invoices produced by BVC are dated prior to that time.

Although BVC's original responses do not identify documents with adequate specificity to satisfy the requirements of Rule 33 (d), the real crux of the present dispute appears to relate more to the parties' respective views of the merits than to compliance with Rule 33 (d) *per se*. BVC's opposition, taken together with its responses, reveals that BVC's basic theory is that: (1) prior to June of 2005, it had long-established relationships with various distributors to which it sold wines bearing the trademarks in dispute, and (2) since June of 2005, BVC has been unable to sell those brands of wines to those distributors as a result of MTL's conduct. MTL may believe that this theory is untenable, or does not satisfy the elements of interference with contract or business relationship, but such arguments go to the merits, rather than to the adequacy of BVC's discovery responses.

That being said, however, MTL is entitled to interrogatory responses that are complete and unambiguous, and it should not have to piece together the theories and facts on which BVC is relying from responses, meet and confer correspondence, and briefing. It appears that BVC does not contend it had any ongoing, written contracts with any distributors with which MTL interfered. If that is true, BVC should so state. If it is not true, BVC should identify the contracts. If BVC is contending that it had any ongoing *oral* contracts with which MTL interfered, it should identify those.

The essence of BVC's claim, however, appears to lie in its assertion that it had ongoing

2

*business relationships* with its distributors with which MTL interfered. The specific invoices and purchase orders to which BVC points were not offered as examples of specific contracts with which MTL had interfered, but to show the existence of those long-time business relationships, and as a means of identifying all of the different distributors. BVC should amend its responses to make its precise contentions on these points clear.[2]

Finally, BVC may be correct that it would serve no purpose to require it to list specifically each purchase order or invoice. The issue, however, is not whether BVC should be required to identify purchase orders and invoices, but whether it should be required to list the *distributors* relevant to this action. BVC insists that the distributors can be ascertained from the purchase orders and invoices it has produced, and from the meet and confer process wherein it identified by production number the main group of such documents. BVC, however, has also stated that other purchase orders and invoices may be included elsewhere in the production, and that while it believes those documents to be "largely" duplicative of the documents specifically identified, it does not foreclose reference to any additional distributors that might be identified in those other produced documents.

BVC's contention that MTL could easily locate any such additional purchase orders and invoices among the documents produced is insufficient. Rule 33 (d) requires a party relying on its provisions "to specify the records" in which the information can be found. While that may not require a party to provide specific production numbers in all instances, it is not sufficient for BVC to say only, in effect, "just look through the entire production for anything that appears to be a purchase order or invoice." BVC will therefore be required either, (1) to serve an amended response that includes a list of all of the distributors with which it contends it had relationships, where it alleges those relationships have been harmed by the conduct of MTL; or (2) to serve an amended response that includes a list by production number of *all* the purchase orders or invoices from which

---

[2] By way of example, during meet and confer efforts, BVC's counsel provided significant information that is not part of the responses. (See Opposition at 8:8-15.)

3

BVC contends a complete list of the relevant distributors could be compiled.[3]  Accordingly, to the extent explained above, the motion will be granted as to Interrogatories Nos. 2 and 4.

### B. Interrogatory Nos. 3 and 5

These interrogatories seek, among other things, information as to the "nature and quantity" of BVC's damages sustained as a result of the alleged interference.  BVC amended its original responses to state that, based on the information it presently possesses and subject to expert analysis, it expects at least $1.32 million in lost profits over the next three and a half years, as the result of not being able to sell four specific brands of wine.[4]  On reply, MTL complains that BVC's amendments to its responses are inadequate because they remain "completely silent on critical aspects of the [alleged] interference," omitting information as to when or how the interference occurred. (Reply at 5:26-6:2.)  MTL's motion, however, expressly states, "[i]t is only with respect to th[e] damages portion of BVC's responses to Interrogatory Numbers 3 and 5 that MTL is moving to compel here." (Motion at 6:19-21.)   Accordingly, the adequacy of BVC responses with respect to these other "critical aspects" of the claims is not before the Court.

With respect to the issue presented by the motion, MTL asserts that it is entitled to know specifically what documents BVC relied on in making its $1.32 million calculation.  These interrogatories, though, do not seek identification of documents, and as BVC points out, damages calculations ultimately will be a matter of expert testimony.  It is true, however, that BVC's amended responses invoke Rule 33 (d) and point MTL to the "purchase orders, invoices, and sales

---

[3]  The Court understands that BVC may not have yet completed its discovery into MTL's sales activities after June of 2005.  It is unclear whether BVC believes it has a viable interference claim with respect to any distributors to which MTL has made no sales.  If BVC believes it has interference claims even in such circumstances, then its responses to these interrogatories will not depend on what it learns about MTL's activities.  If, however, BVC intends to pursue interference claims only with respect to distributors to which MTL has made sales, then it should respond to these interrogatories now based on its best information as to which distributors are involved, and supplement the responses upon learning anything new.

[4]  BVC also states that it cannot yet calculate the amount of "ill-gotten proceeds" MTL has received from its sales of these brands.  MTL disputes that is an appropriate or recoverable measure of damages, but expressly disclaims seeking a further or amended response on this point.

4

1 histories" as the basis for calculating lost profits. The reference to Rule 33 (d) in this instance is
2 misplaced. Either BVC has additional material on damages beyond its narrative answer, or it does
3 not. Thus, BVC must serve an amended response that either specifically identifies by production
4 number the documents on which it relies, or that strikes the open-ended reference to Rule 33 (d).
5 That said, BVC has adequately disclosed the "nature and quantity" of its claimed damages at this
6 juncture; the details of how those damages are calculated and the specific documents on which BVC
7 relies to support those calculations will all be appropriate subjects of expert reports and expert
8 discovery in due course. Accordingly, to the limited extent set forth above, the motion will be
9 granted as to Interrogatories Nos. 3 and 5.

C. <u>Interrogatory No. 6</u>

12 This interrogatory requests BVC to "describe in detail and by product BVC's role in the
13 production" of the wines in dispute. BVC responds that, (1) it "has played a significant role in
14 selecting each of the wines;" (2) Henry van der Voort "often went to France to personally taste and
15 select the wines;" and (3) BVC "often communicated with MTL regarding the quality of the wines."
16 BVC then invokes Rule 33 (d) and refers generally to all documents that had been or will be
17 produced.

18 BVC argues that reference to "virtually" all of the documents produced in this action is
19 appropriate because MTL has broadly defined this interrogatory as calling for information regarding
20 BVC's role in "any step of production" and all of the documents have at least some tangential
21 relationship that general concept. BVC, however, is conflating a relevance inquiry with the purpose
22 of Rule 33 (d). This interrogatory called for BVC to describe its role in production of the wines.
23 Although "virtually all" of the mass of documents to which it has pointed very well may reflect
24 some aspect of the parties' relationship, the invocation of Rule 33 (d) is insufficient to make this a
25 meaningful or complete interrogatory response.

26 As BVC's present response stands, its only claimed role in the production of the wines was
27 Mr. van der Vort's personal involvement in selecting the wines and "communications" between
28 BVC and MTL regarding quality. To the extent that BVC wishes to rely on Rule 33(d) rather than

5

by describing those "communications" in any further detail, it shall serve an amended response identifying any such documents reflecting those communications by production numbers. To the extent BVC intends to rely on any *other* facts to show its involvement in the production of the wines, it shall serve an amended response stating those facts in reasonable detail. As discussed at the hearing, however, as a condition to BVC's obligation to serve such an amended response, the parties shall first engage in further meet and confer discussions in an attempt to reach a mutually-agreed definition of "production." If, and only if, the parties cannot reach such an agreement, BVC may state its understanding of the term in its amended response and then respond accordingly.

D. Interrogatory No. 11

MTL has effectively conceded that BVC's amendment to its response to this interrogatory is sufficient.[5]

### III. CONCLUSION

The motion to compel is granted to the extent set forth above, and is otherwise denied. BVC shall serve amended responses as required by this order within 30 days of this date.

IT IS SO ORDERED.

Dated: December 13, 2006

RICHARD SEEBORG
United States Magistrate Judge

---

[5] MTL requests in a footnote that the Court extend its rulings in this motion to apply to Interrogatory Nos. 7 and 9, in the event that BVC's amended responses thereto may "suffer the same ills" when provided. The Court cannot rule on the adequacy of responses not before it. On any occasion, however, that a discovery request or response presents an issue identical to or substantially similar to an issue on which the Court has previously ruled, parties are expected to take the prior ruling into account.

ORDER
C 05-5122 JF (RS)

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Lila Inayat Bailey     lbailey@perkinscoie.com

Anne Elizabeth Kearns     akearns@kksrr.com, alau@kksrr.com

Kenneth E. Keller     kkeller@kksrr.com, alau@kksrr.com

Michael H. Rubin     mrubin@perkinscoie.com, sandrews@perkinscoie.com

Kenneth B. Wilson     kwilson@perkinscoie.com, eeberline@perkinscoie.com; sshanberg@perkinscoie.com; wriggs@perkinscoie.com; lbailey@perkinscoie.com; dhellmoldt@perkinscoie.com; mrubin@perkinscoie.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 12/13/06**                                           **Chambers of Judge Richard Seeborg**

                                                                    **By:        /s/ BAK**

ORDER
C 05-5122 JF (RS)